[Cite as *UBS Fin. servs., Inc. v. Lacava*, 2018-Ohio-3165.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 106256

## UBS FINANCIAL SERVICES, INC., ET AL.

PLAINTIFFS-APPELLEES

vs.

## ALBERT V. LACAVA, JR., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-868794

**BEFORE:** Celebrezze, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** August 9, 2018

**ATTORNEY FOR APPELLANT**

Carol Dillon Horvath
P.O. Box 42044
Middleburg Heights, Ohio 44130

**ALSO LISTED:**

**Attorney for Mary Lacava**

Carol Dillon Horvath
P.O. Box 42044
Middleburg Heights, Ohio 44130

**For Albert Lacava**

Albert V. Lacava, pro se
59 Brandywine Drive
Hudson, Ohio 44236


**ATTORNEYS FOR APPELLEE**

Joseph S. Simms
Amy A. Jeffries
Robert D. Barr
Christine M. Cooper
Koehler Fitzgerald, L.L.C.
1111 Superior Avenue East, Suite 2500
Cleveland, Ohio 44114

**ALSO LISTED:**

**For Huntington National Bank**

Huntington National Bank, pro se
Attn:   Legal Dept. EA2W34
7 Easton Oval
Columbus, Ohio 43219

**For JP Morgan Chase Bank, N.A.**

JP Morgan Chase Bank, N.A., pro se
Court Orders & Levies Department
P.O. Box 183164
Columbus, Ohio 43218

**For Northwest Bank**

Northwest Bank, pro se
Attn:   Product Support Services
100 Liberty Street
Warren, Pennsylvania 16365

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Assurance Investment Management, L.L.C. (hereinafter "AIM"), appeals the trial court's rulings on the motions for summary judgment filed by AIM, plaintiff-appellee, UBS Financial Services, Inc. (hereinafter "UBS"), and defendants, Albert and Mary Lacava.[1] AIM argues that the trial court erred in (1) ordering AIM to comply with the charging order that the trial court granted in favor of UBS against the Lacavas' ownership interests in AIM, and (2) ordering AIM to freeze all assets and accounts immediately and to only disburse its money and assets to satisfy the judgment in favor of UBS. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} Mr. Lacava was employed at UBS from approximately 2004 to 2008. UBS terminated Mr. Lacava's employment on July 17, 2008. Approximately one month later, Mr. Lacava formed AIM, an investment management company. AIM's original operating agreement, dated August 22, 2008, listed Mr. Lacava as AIM's sole owner and member, president, and chief investment officer, and provided that he was entitled to all of AIM's profits and cash proceeds. The original operating agreement provided that Mr. Lacava had full management rights of AIM. AIM's operating agreement was amended for the first time on February 28, 2009. The first amended operating agreement also listed Mr. Lacava as AIM's sole owner and member, president, and chief investment officer.

{¶3} On December 26, 2008, Mr. Lacava filed a statement of claim against UBS with the

---

[1] The Lacavas filed appeals in companion cases challenging the trial court's rulings on summary judgment. 8th Dist. Cuyahoga Nos. 106260 and 106461.

Financial Industry Regulatory Authority ("FINRA") regarding the manner in which UBS terminated his employment.[2] Mr. Lacava asserted causes of action for breach of contract, breach of the covenant of good faith and fair dealing, failure to supervise, tortious interference, wrongful termination, libel, and slander. In March 2009, UBS filed an answer and a counterclaim seeking monetary damages for Mr. Lacava's alleged breach of promissory notes. In February 2010, the FINRA arbitration panel ruled in UBS's favor on Mr. Lacava's claims, and ruled in favor of UBS on its counterclaim. The panel awarded UBS compensatory damages in the amount of $196,963.89.

{¶4} Mr. Lacava's efforts to vacate and/or appeal the arbitration panel's award were unsuccessful. UBS's attempts to satisfy the judgment were also unsuccessful due to Mr. Lacava's apparent insolvency.

{¶5} As noted above, at the time that the arbitration proceedings commenced in December 2008, Mr. Lacava was AIM's sole member, owner, and manager. However, AIM's operating agreement was amended for the second time on January 21, 2010 — approximately two weeks before the arbitration proceedings concluded in February 2010. In this amended operating agreement, Mrs. Lacava, Mr. Lacava's wife, was listed as a member of AIM with an ownership interest of 94.8 percent. As a result of the amendment to the operating agreement, Mr. Lacava's ownership interest in AIM was reduced from 100 percent to 5.2 percent. Mr. Lacava's transfer of his ownership interest in AIM to his wife was not discovered until UBS and AIM exchanged discovery in Cuyahoga C.P. No. CV-10-723001. UBS alleged that Mr. Lacava was not paid, compensated, or reimbursed in exchange for Mrs. Lacava's ownership interest.

{¶6} In April 2010, UBS filed an application in the common pleas court seeking to

---

[2] Case No. 08-04976.

confirm the award issued by the FINRA arbitration panel.[3]   Mr. Lacava did not respond to UBS's application, and as a result, the trial court granted default judgment in favor of UBS against Mr. Lacava on June 17, 2010.   The trial court confirmed the arbitration award and entered a monetary judgment in the amount of $196,963.89 in favor of UBS against Mr. Lacava.

{¶7} After learning that Mr. Lacava transferred his ownership interest in AIM to his wife while UBS's claim for a monetary judgment was pending, UBS filed two fraudulent conveyance actions in an effort to satisfy the monetary judgment it had obtained against Mr. Lacava.

{¶8} First, in Cuyahoga C.P. No. CV-12-773822, UBS filed a complaint in January 2012 against Mr. and Mrs. Lacava alleging that Mr. Lacava fraudulently transferred his interest in AIM to his wife in order to defraud UBS as a creditor.   The Lacavas filed a counterclaim for abuse of process and/or frivolous conduct.   In June 2015, the trial court granted UBS's motion for summary judgment on the Lacavas' counterclaim.   On September 11, 2015, UBS voluntarily dismissed the fraudulent conveyance action against Mr. and Mrs. Lacava without prejudice pursuant to Civ.R. 41(A)(1)(a).

{¶9} Second, in Cuyahoga C.P. No. CV-16-868794, UBS filed a complaint against Mr. Lacava, Mrs. Lacava, and AIM on September 9, 2016.   In Count 1, UBS requested a charging order against Mr. Lacava's ownership interest of AIM pursuant to R.C. 1705.19.   In Count 2, UBS requested to be appointed a receiver pursuant to R.C. 2735.01.   In Count 3, UBS requested that the trial court set aside Mr. Lacava's transfer of his ownership interest in AIM to his wife as a fraudulent transfer under R.C. 1336.04.

{¶10} On December 7, 2016, the trial court denied UBS's motion for appointment of receiver.   Mrs. Lacava and AIM filed a motion to transfer venue to Summit County on

_____

[3] Cuyahoga C.P. No. CV-10-723001.

December 19, 2016; Mr. Lacava filed a motion to transfer venue to Summit County on December 20, 2016. On January 4, 2017, the trial court denied the motions to transfer venue.

{¶11} On June 19, 2017, UBS filed its motion for summary judgment. Mrs. Lacava and AIM filed a motion for summary judgment on July 3, 2017. AIM argued that any and all claims that UBS asserted against AIM were barred by the statute of limitations set forth in R.C. 1336.09, governing claims for fraudulent transfer. Mr. Lacava filed a motion for summary judgment on July 4, 2017.

{¶12} On July 28, 2017, the trial court issued its judgment entry and opinion ruling on the parties' summary judgment motions. The trial court granted UBS's motion for summary judgment on its claims of fraudulent conveyance and request for a charging order. The trial court voided Mr. Lacava's fraudulent transfer of his ownership interest in AIM, and issued a charging order against Mrs. Lacava's ownership interest in AIM. The trial court attached the assets that Mr. Lacava transferred to AIM and awarded UBS compensatory damages against Mr. Lacava in the amount of $196,963.89.

{¶13} The trial court granted summary judgment in AIM's favor on the statute of limitations issue. However, the trial court ordered AIM to "freeze any assets and accounts immediately and those assets and accounts can only be released to satisfy this judgment." The trial court went on to explain that AIM "is bound by the court's decision to comply with this order and is restricted from disbursing any money or asset other than to satisfy this judgment." Finally, regarding the relief that the trial court granted in favor of UBS, the trial court's judgment entry provides, in relevant part,

> The court grants the following relief in favor of UBS * * * and against AIM so far as it holds assets which are recoverable to satisfy this judgment and the prior judgment obtained by UBS:

* * *

4. AIM, Mr. Lacava, Mrs. Lacava, and any and all parties acting in concert with any of these parties are enjoined from any disposition of any assets of AIM, Mr. Lacava or Mrs. Lacava.

On August 16, 2017, the trial court awarded UBS $50,155 in attorney fees and $480.33 in expenses and dismissed the case in its entirety with prejudice.

{¶14} On September 15, 2017, AIM filed the instant appeal challenging the trial court's July 28, 2017 judgment. AIM assigns 14 errors for review:

1. After correctly ruling AIM is granted R.C. 1336.09 statute of limitations, extinguishing any and all claims for relief the Trial Court Order erred in committing a plain legal error by ordering conscious shocking extreme financial punishments, effectively putting the AIM out of business. Violating the doctrine of separation of powers and an abuse of discretion.

2. After a charging order was granted the plaintiff/creditor for a debt against an individual AIM member solely in his personal and individual capacity, the Trial Court Order "made up" extreme financial restrictions to AIM, LLC with no legal authority, and in direct violation of R.C. 1705.19, R.C. 1705.18, R.C. 1705.17, which violates the doctrine of separation of powers and is an abuse of discretion.

3. The Trial Court Order erred in committing plain legal error against other AIM members, listed in the AIM Operating Agreement dated 8/27/2016, and not named in the case and with no claims against them, have a legal right to equal protection for their personal property in their LLC membership units, pursuant to R.C. 1705.17, R.C. 1705.11, R.C. 1705.48(D), R.C. 1705.19, the Fifth, and Fourteenth Amendments of the U.S. Constitution, and the AIM Operating Agreement dated 8/27/2016[.]

4. After correctly ruling AIM is granted R.C. 1336.09 statute of limitations, extinguishing any and all claims for relief, the Trial Court Order erred in committing plain legal error, not following statutory language in R.C. 1336.09 and erroneously misapplying an unlawful remedy to AIM by R.C. 1336.08(B)(1)(b). The Trial Court granted AIM R.C. 1336.09, all remedies have been extinguished, therefore, R.C. 1366.08(B)(1)(b), cannot be legally even considered toward AIM, LLC. This is a violation of the doctrine of the separation of powers.

5. After correctly ruling AIM is granted R.C. 1336.09 statute of limitations, extinguishing any and all claims for relief, the Trial Court Order violated the separation of powers doctrine and erred in committing a plain legal error, "making

up" a specific language not in the law disallowing "*any and all parties acting in concert*" with AIM (or Mr. or Mrs. Lacava) in the disbursing of any assets, violating R.C. 1336.09, R.C. 1705.19, and R.C. 1336.07.

6. After correctly ruling AIM is granted R.C. 1336.09 statute of limitations, extinguishing any and all claims for relief, the Trial Court Order erred in committing plain legal error, erroneously applying R.C. 1366.07(A)(2) to AIM. The Trial Court granted AIM R.C. 1366.09, all remedies have been extinguished, therefore, R.C. 1336.07(A)(2) cannot be legally even considered toward AIM. This is a violation of the doctrine of the separation of powers. Furthermore, the Court Order erroneously labels AIM as the transferee, in R.C. 1336.07(A)(2) when Mrs. Lacava is the transferee in the instant matter[.] Furthermore, was the asset exchanged for reasonable value was a portion of the LLC membership units, not cash, and has been unlawfully been attached, in violation of R.C. 1336.09, R.C. 1705.19, R.C. 1705.34.

7. Since UBS was granted a charging order, by Ohio Statutory Law, they automatically become an assignee of AIM per R.C. 1705.18 and the AIM Operating Agreement dated 8/27/2016. The Trial Court Order erred in committing plain legal error, violating Ohio Limited Liability Companies Act and statutory law by not holding UBS/assignee bound by the AIM Operating Agreement dated 8/27/2016, pursuant to R.C. 1705.18(B), R.C. 1705.081(A), and R.C. 1705.081(A)(D).

8. The Trial Court Order erred in erroneously suggesting the AIM Operating Agreement to state "*preventing a charging order against any members' interest in AIM*", which is not supported by the record.

9. The Trial Court Order error in not having UBS/assignee to pay AIM's reasonable legal bill pursuant to Ohio statutory law, and AIM's Operating Agreement dated 8/27/2016 Section 6.3. Ohio statutory law enforces maximum effect to the principle of contract and to the maximum enforceability of the Operating Agreement pursuant to R.C. 1705.18(A), (B), R.C. 1705.081(A)(D).

10. The Trial Court Order erred in committing plain legal error, stating the "essence of the case" was AIM accounts were used for personal spending the $140,000 partial sale proceeds in Jan. 2010 and all its profits each year thereafter into the present, is not supported by the record.

11. The Trial Court erred in denying AIM (and all other defendants) pleadings to transfer jurisdiction and venue to Summit County Common Pleas Court, the lawful jurisdiction and venue. AIM was formed in Summit County, LLC, work address is only been Summit County, LLC members reside in Summit County, partial sale of LLC members units occurred in Summit County. Citizenship of AIM, LLC members also resides in Summit County. To minimize repetition please see Mr. Lacava's Brief Assignment of Error #2.

12. The Trial Court erred in denying AIM from being removed as a named defendant.

13. After correctly ruling AIM is granted R.C. 1336.09 statute of limitations, extinguishing any and all claims for relief, the Trial Court Order erred in committing plain legal error, unlawfully and immediately eliminated AIM's right of Due Process by eliminating any money access for AIM to pay for a lawyer to represent and file for AIM in the Court system. Thus the LLC was denied substantial rights and procedural due process guaranteed by the Fifth, and Fourteenth Amendments to the United States Constitution.

14. The Trial Court erred in giving summary judgment against Mr. and Mrs. Lacava and granted in favor of UBS, because the record shows that many genuine disputes exist as to many material facts, then the case must go to trial, as a matter of law. To minimize repetition please see Mr. Lacava's Brief Assignment of Error #1.

{¶15} To the extent that AIM's assignments of error are interrelated, they will be addressed together. Furthermore, for ease of discussion, AIM's assignments of error will be addressed out of order.

## II. Law and Analysis

### A. Standard of Review

{¶16} Summary judgment, governed by Civ.R. 56, provides for the expedited adjudication of matters where there is no material fact in dispute to be determined at trial. In order to obtain summary judgment, the moving party must show that "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994).

**{¶17}** The moving party has the initial responsibility of establishing that it is entitled to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "[I]f the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to establish the existence of a genuine issue of material fact." *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 16, citing *Dresher* at 293.

**{¶18}** Once a moving party demonstrates no material issue of fact exists for trial and the party is entitled to judgment, the nonmoving party has a duty to come forth with argument and evidence demonstrating a material issue of fact does exist that would preclude judgment as a matter of law. *Dresher* at *id*. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id*.

### B. Statute of Limitations

**{¶19}** As an initial matter, we must address AIM's argument that the statute of limitations set forth in R.C. 1336.09, governing claims for fraudulent transfer, (1) barred any and all claims that UBS asserted against AIM, and (2) precluded the trial court from ordering AIM to comply with the charging order. AIM appears to raise this argument in its first, fourth, fifth, sixth, and thirteenth assignments of error. AIM's statute of limitations argument is misplaced.

**{¶20}** "Fraudulent transfer claims under division (A)(1) of section 1336.04 must be brought within four years after the transfer was made or, within one year after the transfer was or reasonably could have been discovered by the claimant. R.C. 1336.09." *D'Amore v. Matthews*, 8th Dist. Cuyahoga No. 91420, 2009-Ohio-131, ¶ 14.

**{¶21}** Initially, the record in this case reflects that UBS did not assert a fraudulent transfer claim against AIM. In fact, UBS did not assert any claims against AIM. Therefore, R.C.

1336.09 is inapplicable. UBS's fraudulent transfer claim was asserted against Mr. Lacava. *See* complaint at ¶ 45 ("UBS believes and therefore avers that Mr. LaCava made a fraudulent transfer.").

**{¶22}** In its motion for summary judgment, AIM argued that any fraudulent transfer claims that UBS asserted against AIM were subject to the statute of limitations set forth in R.C. 1336.09. The trial court granted AIM's motion for summary judgment "on the issue of statute of limitations."

**{¶23}** Although the trial court granted AIM's motion for summary judgment based on the statute of limitations set forth in R.C. 1336.09, the trial court ordered AIM "to freeze any assets and accounts immediately," and ordered that the assets and accounts only be released to satisfy the trial court's judgment. The trial court explained that AIM "is in the line of transferees and in keeping with the statute, it is bound by the court's decision to comply with this order and is restricted from disbursing any money or asset other than to satisfy this judgment."[4] The trial court recognized that pursuant to R.C. 1336.08(B)(1)(a) and (b), a judgment may be entered against the first transferee and any subsequent transferee.

**{¶24}** In Count 1 of its complaint, UBS requested a charging order, pursuant to R.C. 1705.19, charging Mr. Lacava's membership interest of AIM in order to satisfy the outstanding arbitration judgment, $196,963.89.

> Pursuant to R.C. 1705.19, a judgment creditor of a member of a limited-liability company may apply to a court of common pleas to charge the membership interest of the member for payment of an unsatisfied judgment. A charging order is a judgment creditor's sole and exclusive remedy to satisfy a judgment against the membership interest of a limited-liability-company member. R.C. 1705.19(B).

---

[4] In referencing "the statute," it is not clear whether the trial court was referring to Ohio's Uniform Fraudulent Transfer Act, R.C. Chapter 1336, in general, or specifically referring to R.C. 1336.04 or 1336.08.

*Stanfield v. On Target Consulting, L.L.C.*, 2017-Ohio-8830, 90 N.E.3d 962, ¶ 6 (1st Dist.).

**{¶25}** Contrary to AIM's assertions, an application for a charging order pursuant to R.C. 1705.19 is not subject to the statute of limitations governing fraudulent transfer claims set forth in R.C. 1336.09. Accordingly, R.C. 1336.09 is inapplicable to UBS's request for a charging order, and the statute did not preclude the trial court from ordering AIM to comply with the charging order.

**{¶26}** Based on the foregoing analysis, AIM's first, fourth, fifth, sixth, and thirteenth assignments of error are overruled in this respect.

### C. Remedies

**{¶27}** In its first assignment of error, AIM argues that the trial court's July 28, 2017 orders on summary judgment are "unlawful, unconstitutional, unreasonable, chokehold orders that effectively puts [sic] AIM out of business!" AIM's brief at 17. In its second assignment of error, AIM appears to argue that the trial court's order violated R.C. 1705.19 by allowing UBS to obtain possession of or exercise legal or equitable remedies with respect to the property of AIM.

**{¶28}** UBS named AIM in its complaint in relation to its request for a charging order against Mr. Lacava, who previously transferred his ownership interest in AIM to his wife. The record reflects that Mr. and Mrs. Lacava have full control of AIM — AIM's January 21, 2010 operating agreement provides that Mr. Lacava's ownership interest of AIM was 5.2 percent, and Mrs. Lacava's ownership interest of AIM was 94.8 percent. Accordingly, the trial court's order requiring AIM — comprised of the fraudulent transferor and the fraudulent transferee — to comply with the charging order was not unreasonable, unlawful, or unconstitutional.

**{¶29}** AIM appears to argue that the trial court erred by ordering AIM to comply with the

charging order because UBS's claims were against Mr. Lacava, not AIM, and thus the trial court had no authority to prohibit AIM from disbursing money and/or assets other than to satisfy the judgment the trial court entered in favor of UBS against Mr. Lacava. AIM's argument — that the trial court had no authority to order the assets that Mr. Lacava transferred into AIM or to Mrs. Lacava be frozen except to satisfy UBS's judgment — would render R.C. Chapter 1336 and R.C. 1705.19 meaningless, particularly because the Lacavas have full control of AIM.

{¶30} Finally, regarding AIM's argument that the trial court violated R.C. 1705.19 in ordering AIM to comply with the charging order, it is unsupported by the record. Contrary to AIM's assertion, the trial court did not grant UBS the right to obtain possession of or exercise remedies with respect to AIM's property. The trial court simply ordered AIM to comply with the charging order to ensure that the judgment in favor of UBS was satisfied. Once the judgment was satisfied, either by Mr. Lacava or the assets that he had transferred to AIM and/or Mrs. Lacava, AIM was free to use the LLC's money, assets, and accounts however AIM wished to do so.

{¶31} For all of these reasons, AIM's first and second assignments of error are overruled.


{¶32} In its fifth assignment of error, AIM argues that the trial court violated R.C. 1336.09, 1705.19, and 1336.07 in ordering AIM to comply with the charging order.

{¶33} R.C. 1336.07 provides, in relevant part,

(A) In an action for relief arising out of a transfer or an obligation that is fraudulent * * * a creditor * * * may obtain one of the following:

* * *

(3) *Subject to the applicable principles of equity* and in accordance with the Rules of Civil Procedure, any of the following:

(a) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(b) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee;

(c) Any other relief that the circumstances may require.

(Emphasis added.)

{¶34} As noted above, R.C. 1705.19(C) provides that "[n]o creditor of a member of a limited liability company or a member's assignee shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company."

{¶35} In the instant matter, AIM argues that R.C. 1336.07(A)(3) is rendered null and void by R.C. 1705.19(C). AIM emphasizes that a charging order is UBS's sole and exclusive remedy against Mr. Lacava and that UBS had no right to obtain possession of or exercise remedies with respect to AIM's property. This is the exact same argument AIM raised in its second assignment of error.

{¶36} As noted above, the trial court's order requiring AIM to comply with the charging order was not unreasonable or unlawful, and the trial court's order does not violate R.C. 1705.19. Accordingly, AIM's fifth assignment of error is overruled.

### D. Third-Party Members of AIM

{¶37} In its third assignment of error, AIM argues that the trial court's order caused irreparable harm to the other members of AIM, subsequent transferees Amanda and Lauren Lacava. AIM appears to argue that UBS was required to request and obtain charging orders against Amanda and Lauren in order to obtain their personal property or interfere with AIM's

business. Furthermore, AIM appears to argue that AIM's other members are not liable for Mr. Lacava's actions, and that these other members are not liable to UBS merely because they are members of the LLC.

{¶38} As noted above, AIM's original operating agreement, executed on August 22, 2008, and the first amended operating agreement, executed on February 28, 2009, listed Mr. Lacava as AIM's sole member. The second amended operating agreement, executed on January 21, 2010, listed Mr. Lacava as AIM's president, initial member, and initial officer, holding the position of president and treasurer. The January 2010 amended operating agreement also listed Mrs. Lacava as an initial member and initial officer, holding the position of secretary. This operating agreement provided that Mr. Lacava's ownership of AIM was 5.2 percent and Mrs. Lacava's ownership of AIM was 94.8 percent.

{¶39} AIM's operating agreement was amended for a third time on August 27, 2016. This operating agreement provides that (1) Mrs. Lacava is AIM's chairman; (2) AIM's members are Mrs. Lacava, Mr. Lacava, Amanda Lacava, and Lauren Lacava; and (3) AIM's officers are Mrs. Lacava, holding the position of chairman, and Mr. Lacava, holding the position of president. Furthermore, this operating agreement provided that Mrs. Lacava's ownership of AIM was 87.28 percent; Mr. Lacava's ownership of AIM was 5.2 percent; and Amanda and Lauren each had 3.76 percent ownership of AIM.

{¶40} In other words, after Mr. Lacava transferred his ownership interest in AIM to Mrs. Lacava in January 2010, Mrs. Lacava subsequently transferred 7.52 percent of her ownership interest to Amanda and Lauren. Accordingly, Mr. Lacava is the transferor of his ownership interest, Mrs. Lacava is the initial/first transferee, and Amanda and Lauren are subsequent transferees.

**{¶41}** While AIM's first assignment of error focuses, in part, on how the LLC was affected by the trial court's judgment, AIM's third assignment of error appears to be an attempt to protect the rights of the unnamed, third-party members of the LLC — Amanda and Lauren Lacava. AIM does not have standing to do so.

**{¶42}** Generally, a party does not have standing to prosecute an appeal in order to protect the rights of a third party. *See Wells Fargo Bank, N.A. v. Kessler*, 10th Dist. Franklin No. 15AP-216, 2015-Ohio-5085, ¶ 23. In order to have standing to allege error, a party must assert its own rights rather than the rights of a third party. *Util. Serv. Partners, Inc. v. Pub. Util. Comm. of Ohio*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 49.

> "[A] party ordinarily cannot appeal an alleged violation of another party's rights. However, '[a]n appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant.'" *In re Mourey*, 4th Dist. [Athens] No. 02CA48, 2003-Ohio-1870, ¶ 20[, quoting] *In re Smith*, 77 Ohio App.3d 1, 13, 601 N.E.2d 45 (6th Dist.1991); *In re Hiatt*, 86 Ohio App.3d 716, 721, 621 N.E.2d 1222 (4th Dist.1993).

*In re M.A.*, 7th Dist. Monroe Nos. 17 MO 0004 and 17 MO 0005, 2018-Ohio-209, ¶ 14.

**{¶43}** In the instant matter, AIM lacks standing to assert the rights of the unnamed third-party LLC members or to challenge the trial court's judgment in order to protect their rights. Accordingly, AIM's third assignment of error is overruled.

**{¶44}** Applying the same principles regarding standing, we overrule AIM's fourteenth assignment of error, in which AIM argues that genuine issues of material facts exist that precluded the granting of summary judgment in favor of UBS and against Mr. and Mrs. Lacava. While AIM can challenge the trial court's summary judgment rulings as they pertain to AIM, AIM lacks standing to challenge the trial court's judgment as is pertains to Mr. and Mrs. Lacava. Furthermore, AIM failed to support its argument with citations to the record, statutory authority,

or case law, as required by App.R. 16(A)(7). AIM merely instructs this court to review the first assignment of error in Mr. Lacava's appellate brief. It is not this court's duty to construct an argument on behalf of AIM, and we decline to do so in this instance. Accordingly, AIM's fourteenth assignment of error is overruled.

### E. R.C. 1336.08

**{¶45}** In its fourth assignment of error, AIM argues that the trial court erred in applying R.C. 1336.08(B)(1)(b).

**{¶46}** R.C. 1336.08(B)(1) provides, in relevant part,

> to the extent a transfer is voidable in an action by a creditor * * * the creditor * * * may recover a judgment for the value of the asset transferred, as adjusted under division (B)(2) of this section, or the amount necessary to satisfy the claim of the creditor * * * whichever is less. The judgment may be entered against *either of the following*:
>
> * * *
>
> (b) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.

(Emphasis added.)

**{¶47}** The trial court's judgment entry provides, in relevant part, "a judgment may be entered against the first transferee *and* any subsequent transferee pursuant to R.C. 1336.08(B)(1)(a) and (b)." (Emphasis added.)

**{¶48}** In support of its argument that the trial court erred in applying R.C. 1336.08, AIM emphasizes that although the statute contemplates entering a judgment against *either* the first transferee *or* subsequent transferees, the trial court stated that a judgment can be entered against the first transferee *and* any subsequent transferees.

**{¶49}** After reviewing the record, we find no merit to AIM's assertion that the trial court

erred in applying R.C. 1336.08. The trial court's misstatement of the statutory language in its judgment entry pertained to the trial court's determination that Mrs. Lacava was subject to the trial court's judgment. This misstatement was not made in relation to AIM. Accordingly, AIM cannot demonstrate that it was prejudiced by the trial court's purported error. AIM's fourth assignment of error is overruled.

### F. R.C. 1336.07

{¶50} In its sixth assignment of error, AIM argues that the trial court erred in its application of R.C. 1336.07(A)(2).

{¶51} R.C. 1336.07(A)(2) provides, in relevant part,

In an action for relief arising out of a transfer or an obligation that is fraudulent * * * a creditor * * * may obtain * * * [a]n attachment or garnishment against the asset transferred or other property of the transferee in accordance with Chapters 2715. and 2716. of the Revised Code[.]

{¶52} In this case, the trial court's opinion on summary judgment provides, in relevant part, "since AIM is in the line of transferees and in keeping with the statute, it is bound by the court's decision to comply with this order and is restricted from disbursing any money or asset other than to satisfy this judgment." Furthermore, in granting relief to UBS, the trial court's order provides, in relevant part, "UBS is awarded attachment of all transferred assets in AIM, pursuant to R.C. 1336.07(A)(2)[.]"

{¶53} In support of its argument that the trial court erred in applying R.C. 1336.07(A)(2), AIM argues that the trial court erroneously referenced AIM as a transferee in its opinion. AIM emphasizes that Mrs. Lacava, not AIM, is the transferee to whom Mr. Lacava transferred his ownership interest in the LLC.

{¶54} After reviewing the record, we find no merit to AIM's argument that the trial court

erred in its application of R.C. 1336.07. Initially, AIM assumes that the trial court was referencing R.C. 1336.07(A)(2) when stating "in keeping with the statute." As noted above, it is not clear whether the trial court was referring generally to R.C. Chapter 1336, Ohio's Uniform Fraudulent Transfer Act, or referring to a specific section of the act. Nevertheless, AIM fails to demonstrate how it was prejudiced by the trial court's purportedly erroneous statement.

**{¶55}** Based on the unique facts and circumstances in this case, we cannot say that the trial court erred in finding that AIM was "in the line of transferees." The record reflects that AIM is fully controlled by the transferor, Mr. Lacava, and the transferee, Mrs. Lacava.

**{¶56}** For all of these reasons, AIM's sixth assignment of error is overruled.

### G. AIM's Operating Agreement

**{¶57}** In its eighth assignment of error, AIM argues that the trial court erred in interpreting AIM's operating agreement as an attempt to prevent a charging order from being issued against any members' ownership interest in the LLC. AIM contends that the trial court's interpretation of the relevant provision in the operating agreement is not supported by the record, and that AIM did not intend to prevent a court from granting a charging order against a member's interest. AIM's arguments are misplaced.

**{¶58}** The trial court's judgment entry provides, in relevant part, "[o]n August 27, 2016[,] there was a further amendment to AIM's operating agreement with language which purports to nullify statutory law preventing a charging order against any members' interest in AIM."

**{¶59}** Initially, we note that the language in AIM's August 2016 operating agreement supports the trial court's interpretation. Section 6.3, governing parties seeking a charging order and/or assignment of a membership interest, provides, in relevant part, "No distributions are provided to members with charging orders." Additionally, Section 6.4, governing

creditors/assignees, provides, in relevant part,

> [n]o member's interest can be assigned to a creditor. Such Assignee * * * shall have * * * no right to receive any distributions of cash or property, no incomes, no right of enforcement, no lien, no levy, or no seizure of any kind, on anything pertaining to the operations of the company, its members, employees, suppliers, clients, or financings or to exercise any legal or equitable remedy to Company profits, losses, credits, deductions, gains, distributions, property, receivables, financings, or similar items, and no right to obtain possession or control over any asset, tangible or intangible of the Company.

We further find that to the extent that the trial court determined that AIM's operating agreement could not nullify UBS's statutory right under R.C. 1705.19 to apply for a charging order, the trial court was correct.

> "It is elementary that no valid contract may be made contrary to statute, and that valid, applicable statutory provisions are parts of every contract." *Bell v. N. Ohio Tel. Co.* (1948), 149 Ohio St. 157, 158, 78 N.E.2d 42. This maxim is codified in R.C. Chapter 1705. R.C. 1705.04(A) sets forth the requirements for a company's articles of organization. Besides setting forth the name of the company and the period of its duration, the articles of organization can include any other provisions "that are not inconsistent with applicable law." As a result, to the extent the operating agreement is in conflict with the statute, the statute takes precedence.

*Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209, 857 N.E.2d 583, ¶ 18.

**{¶60}** In this case, AIM's operating agreement can include any provisions that are not inconsistent with applicable law, including R.C. 1705.19. The operating agreement cannot, however, restrict UBS's ability to apply for or obtain a charging order pursuant to R.C. 1705.19. Accordingly, to the extent that AIM's operating agreement conflicted with UBS's remedy as a judgment creditor under R.C. 1705.19, the statute takes precedence over the operating agreement.

**{¶61}** Nevertheless, AIM fails to argue, much less demonstrate, how it was prejudiced by the trial court's purportedly inaccurate interpretation of AIM's operating agreement.

Accordingly, AIM's eighth assignment of error is overruled.

## H. Legal Fees

**{¶62}** In its ninth assignment of error, AIM argues that the trial court erred by not ordering UBS to pay for AIM's legal fees. AIM contends that UBS was required to pay AIM's legal fees pursuant to R.C. 1705.18(A) and (B), R.C. 1705.081(A) and (D), and Section 6.3 of AIM's August 27, 2016 operating agreement.

**{¶63}** R.C. 1705.18(A) provides that an assignment of a membership interest does not entitle an assignee, such as UBS, to become a member of the LLC or exercise any rights of a member. Rather, the statute provides, "[a]n assignment entitles the assignee only to receive, to the extent assigned, the distributions of cash and other property and the allocations of profits, losses, income, gains, deductions, credits, or similar items to which the assignee's assignor would have been entitled."

**{¶64}** R.C. 1705.18(B) provides that an assignee of a membership interest in an LLC "is bound by the operating agreement[.]" R.C. 1705.081(A), governing the effect of an operating agreement, provides, in relevant part,

> an operating agreement governs relations among members and between members, any managers, and the limited liability company. * * * To the extent the operating agreement does not otherwise provide, this chapter governs relations among the members and between the members, any managers, and the limited liability company.

**{¶65}** R.C. 1705.081(D) provides, in relevant part,

> It is the policy of this chapter * * * to give maximum effect to the principle of freedom of contract and to the enforceability of operating agreements. * * * [T]he default rules relating to the rights and obligations between and among the members, managers, and officers of a limited liability company set forth in

sections 1705.01 to 1705.52 and section 1705.61 of the Revised Code may be modified by the operating agreement or by the articles of organization.

**{¶66}** Section 6.3 of AIM's August 2016 operating agreement provides, in relevant part, Party Seeking Court Ordered Charging Order Assignment of a Membership Interest * * * The party seeking a charging order against an individual(s) membership interest(s), is concurrently bound by the most current operating agreement of AIM, LLC[.] * * * If the seeking charging order party is also naming AIM, LLC as a defendant; any matter arising under or related to this operating agreement, or that relate to the AIM, LLC, or the Ohio Limited Liability Company Act, or to interpret or enforce any rights, all costs and reasonable attorney fees are recoverable to AIM, LLC as the prevailing party in disputing the Plaintiff, for naming AIM, LLC as a defendant.

**{¶67}** "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: prevailing party in a civil action may not recover fees as part of the cost of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. *Accord Cruz v. English Nanny & Governess School, Inc.*, 2017-Ohio-4176, 92 N.E.3d 143, ¶ 96 (8th Dist.). One exception to this rule is when a statute or enforceable contract specifically provide for the losing party to pay the prevailing party's attorney fees. *Wilborn* at *id*., citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 34, 514 N.E.2d 702 (1987). The *Wilborn* court went on to explain,

> When the right to recover attorney fees arises from a stipulation in a contract, the rationale permitting recovery is the "fundamental right to contract freely with the expectation that the terms of the contract will be enforced." *Nottingdale* at 36, 514 N.E.2d 702. The presence of equal bargaining power and the lack of indicia of compulsion or duress are characteristics of agreements that are entered into

freely. *See id.* at 35, 514 N.E.2d 702. In these instances, agreements to pay another's attorney fees are generally "enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." *Id.* at syllabus.

*Wilborn* at ¶ 8.

{¶68} In the instant matter, neither R.C. 1705.18 nor 1705.081 specifically provide that the losing party is required to pay the prevailing party's attorney fees. Furthermore, to the extent that the operating agreement purports to provide that AIM is entitled to recover all costs and attorney fees if AIM prevails in a proceeding in which a party requests a charging order against a member's interest in the LLC, UBS was not a party to the August 2016 operating agreement, and thus, did not exercise its right to contract freely with AIM or any of its members.

{¶69} Assuming, arguendo, that the operating agreement was valid and enforceable against UBS, the record reflects that UBS was the prevailing party — UBS obtained a charging order against Mr. Lacava's ownership interest in AIM, and the trial court ordered AIM to comply with the charging order by enjoining AIM from disbursing any money or assets other than to satisfy the judgment entered in favor of UBS. Finally, we cannot say that the trial court erred in finding that UBS was not required to pay AIM's attorney fees upon consideration of all of the circumstances of the case. In its judgment entry, the trial court described Mr. Lacava's conduct as "the most blatant form of fraudulent conveyance this court has ever seen."

{¶70} For all of the foregoing reasons, AIM's ninth assignment of error is overruled.

{¶71} In its seventh assignment of error, AIM argues that the trial court erred by failing to find that UBS was bound by AIM's operating agreement, including Section 6.3. AIM contends that UBS is required to pay AIM's legal fees because (1) UBS is bound by the terms of the

operating agreement, and (2) AIM was the prevailing party. As noted above, AIM was not the prevailing party — UBS obtained a charging order against Mr. Lacava's ownership interest in AIM with which AIM was ordered to comply. Accordingly, AIM's argument fails. AIM's seventh assignment of error is overruled.

## I. Use of AIM Accounts

{¶72} In its tenth assignment of error, AIM argues that the trial court erred in finding that Mr. and Mrs. Lacava used AIM accounts for personal spending. AIM contends that the trial court's determination is not supported by the record.

{¶73} The trial court's judgment entry provides, in relevant part,

> [w]hile Mr. Lacava does not receive any income for his work, a review of the banking records for AIM reveals that its accounts have been used like a personal checking account for Mr. Lacava and Mrs. Lacava. Entries are replete with charges for restaurants, retail stores, groceries, utility bills, on-line purchases, and veterinary bills to only mention a few.

In analyzing the seventh "badge of fraud,"[5] whether the debtor — Mr. Lacava — removed or concealed assets, the trial court's judgment entry provides in relevant part, "[t]his is the essence of the case. Assets were transferred to AIM, used through AIM, and continue to be used through AIM. This includes the $140,000 transfer, the profits earned and the use of AIM accounts as if they were the personal accounts of the Lacavas."

{¶74} Although AIM explains in detail some of its common deductions and expenses, it fails to demonstrate how it was prejudiced by the trial court's purportedly erroneous determination regarding the manner in which the Lacavas used AIM's accounts. Accordingly, AIM's tenth assignment of error is overruled.

## J. Motions to Transfer Venue

---

[5] *Sanderson Farms, Inc. v. Gasbarro*, 10th Dist. Franklin No. 01AP-461, 2004-Ohio-1460.

**{¶75}** In its eleventh assignment of error, AIM argues that the trial court erred by denying the motions to transfer venue to Summit County.

**{¶76}** AIM filed a motion to transfer venue from Cuyahoga County to Summit County on December 19, 2016. Therein, AIM argued that (1) the defendants all reside in Summit County, (2) UBS's claims arose in Summit County, and (3) there is no valid basis to premise venue in Cuyahoga County.

**{¶77}** UBS filed a brief in opposition on December 27, 2016. Therein UBS argued that (1) the case arose from events and transactions that originally occurred in Cuyahoga County, and (2) the defendants consented to jurisdiction and venue in Cuyahoga County, and waived any objection regarding venue based on their prior conduct and filings in the prior litigation.[6] The trial court denied the motions for change of venue filed by AIM and Mr. and Mrs. Lacava.

**{¶78}** Civ.R. 3(C)(4) provides that "upon motion of any party or upon its own motion the court may transfer any action to an adjoining county within this state when it appears that a fair and impartial trial cannot be had in the county in which the suit is pending." Trial courts have wide discretion in deciding whether to grant a motion for change of venue. *State v. Coley*, 93 Ohio St.3d 253, 258, 754 N.E.2d 1129 (2001). A trial court's decision on a motion to change venue is reviewed under an abuse of discretion standard. *Premier Assocs., Ltd. v. Loper*, 149 Ohio App.3d 660, 2002-Ohio-5538, 778 N.E.2d 630, ¶ 37 (2d Dist.). An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

---

[6] Referring to (1) the FINRA arbitration proceedings, (2) the original fraudulent conveyance case, CV-12-773822, and (3) CV-10-723001.

**{¶79}** After reviewing the record, we find that even if Cuyahoga County was an improper venue, AIM waived the defense of improper venue by failing to raise the issue in the November 30, 2016 motion filed by the Lacavas on behalf of AIM. Pursuant to Civ.R. 12(H), a claim of improper venue is waived if it is not raised in a responsive pleading or in a Civ.R. 12(B) motion. *See State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Ohio State Emp. Relations Bd.*, 10th Dist. Franklin No. 15AP-471, 2015-Ohio-5001.

**{¶80}** On November 30, 2016, Mr. and Mrs. Lacava filed a "reply to [UBS's] motion for appointment of receiver and hearing[.]" Although this motion was filed by Mr. and Mrs. Lacava, the record reflects that the Lacavas filed the motion on behalf of AIM.[7] In this motion, the Lacavas requested that the trial court cancel the hearing scheduled on UBS's motion for appointment of receiver, and that AIM be dismissed as a defendant in the case. In support of the request to dismiss AIM as a defendant, the Lacavas argued that (1) UBS had no judgment against AIM, (2) UBS was not a creditor of AIM, (3) UBS did not assert any claims or request relief against AIM in its January 2012 complaint, (4) UBS did not request relief against AIM in its September 2016 complaint, (5) UBS did not have standing to assert a fraudulent transfer claim against AIM, (6) any fraudulent transfer claim that UBS asserted against AIM was time-barred, and (7) UBS's exclusive remedy was to request a charging order against Mr. Lacava's ownership interests in AIM.

**{¶81}** A careful review of the Lacavas' November 30, 2016 filing reveals that it was, in essence, a Civ.R. 12(B)(6) motion to dismiss, filed by the Lacavas on behalf of AIM, for failure to state a claim upon which relief can be granted. In their motion, the Lacavas asserted, in relevant part,

UBS did not assert claims, and no relief against AIM in the Jan. 2012 pleadings. [UBS] also did not assert any relief in their 2016 filing against AIM. UBS simply does not have standing against AIM under [Ohio's Uniform Fraudulent Transfer Act], and therefore [AIM] should be dismissed for failure to state a claim upon which relief can be granted.

Motion at p. 2.

{¶82} Although the Lacavas, acting on AIM's behalf, raised the Civ.R. 12(B)(6) defense of failure to state a claim upon which relief can be granted in their November 30, 2016 motion, they did not raise the Civ.R. 12(B)(3) defense of improper venue. Accordingly, AIM waived the defense of improper venue. *See Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, 870 N.E.2d 714, ¶ 7-9 (if a motion is filed raising Civ.R. 12(B) defenses, the Civ.R. 12(B) defenses that are not included in such a motion are waived).

{¶83} Based on the foregoing analysis, we find no basis upon which to conclude that the trial court abused its discretion in denying the motions to transfer venue to Summit County. Accordingly, AIM's eleventh assignment of error is overruled.

### K. Motion to Remove AIM as a Defendant

{¶84} In its twelfth assignment of error, AIM argues that the trial court erred in denying AIM's motion to be removed as a defendant. In support of its argument, AIM contends that UBS's request for a charging order pertained to Mr. Lacava's personal property, and that there is no reason for AIM to be a party to UBS's claim against Mr. Lacava's personal property.

{¶85} In AIM's motion for judgment on the pleadings, filed on January 5, 2017, AIM argued that it should be dismissed as a defendant from the case. AIM asserted that although it was named as a defendant in UBS's complaint, "there are no claims pending against AIM, and

---

[7] Counsel for AIM subsequently filed a notice of appearance on December 13, 2016.

[UBS's] prayer for relief does not seek a judgment or other relief against AIM. Accordingly, AIM should be dismissed."

{¶86} On February 24, 2017, the trial court denied AIM's motion for judgment on the pleadings, concluding, "AIM is a necessary party if [UBS] is able to prove fraudulent conveyance. [UBS] alleges AIM was a recipient and conduit of payments to [Mrs. Lacava]."

{¶87} After reviewing the record, we cannot say that the trial court erred in denying AIM's motion to be removed as a defendant. In Count 2 of its complaint, UBS requested "the appointment of a receiver to take control of the assets and operations of Mr. and Mrs. Lacava's and AIM's assets, pursuant to R.C. 2375.01(A), (C) and/or (F)." Complaint at ¶ 40. UBS further requested "an injunction against further disposition by both Mr. Lacava and Mrs. Lacava of the asset transferred or of other property, pursuant to R.C. 1336.07(A)(3)(a)." UBS essentially alleged that Mr. Lacava transferred his assets to his wife or AIM, or concealed his assets through AIM in order to frustrate or prevent UBS from satisfying the arbitration award. Finally, the record reflects that at the time of the purportedly fraudulent transfer, Mr. and Mrs. Lacava represented 100 percent of AIM's ownership interests; after the August 2016 amendment to the operating agreement, Mr. and Mrs. Lacava represented 92.48 percent of AIM's ownership interest.

{¶88} For all of these reasons, we find that the trial court did not err in denying AIM's motion for judgment on the pleadings and request to be dismissed from the case. Based on the facts in this case, AIM was an interested party. Furthermore, had UBS not named AIM as a party in its complaint, the trial court would not have had jurisdiction to order AIM to freeze its accounts and assets and enjoin AIM from disbursing any money or assets other than to satisfy the trial court's judgment. *See State ex rel. Doe v. Capper*, 132 Ohio St.3d 365, 2012-Ohio-2686,

972 N.E.2d 553, ¶ 15, citing *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 99, ("[a] party's failure to join an interested and necessary party constitutes a jurisdictional defect that precludes the court from rendering a judgment in the case.").

{¶89} Accordingly, AIM's twelfth assignment of error is overruled.

### L. Due Process

{¶90} In its thirteenth assignment of error, AIM argues that the trial court's order prohibiting AIM from disbursing money or assets other than to satisfy the judgment violated AIM's due process rights by restricting AIM's ability to hire an attorney or pay for court filings.

{¶91} After review, we find that AIM's argument is entirely unsupported by the record. AIM was represented by counsel, both in the trial court and in the instant appeal. Accordingly, AIM failed to demonstrate any prejudice resulting from this alleged due process violation. AIM's thirteenth assignment of error is overruled.

### III. Conclusion

{¶92} After thoroughly reviewing the record, we affirm the trial court's orders on summary judgment. The trial court's order requiring AIM to comply with the charging order was not unreasonable, unlawful, or unconstitutional, and the trial court's order did not violate AIM's due process rights. The statute of limitations set forth in R.C. 1336.09, governing fraudulent transfer claims, did not preclude the trial court from ordering AIM to comply with the charging order. AIM lacks standing to challenge the trial court's judgment as it pertains to the rights of Mr. and Mrs. Lacava or the other members of AIM. The trial court did not err in failing to order UBS to pay AIM's legal fees. The trial court did not abuse its discretion in

denying AIM's motion to transfer venue to Summit County. The trial court did not err in denying AIM's motion to be removed as a defendant.

**{¶93}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, SR., J., CONCUR