[Cite as *UBS Fin. Servs. Inc. v. Lacava*, 2018-Ohio-3276.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 106260

---

**UBS FINANCIAL SERVICES, INC.**

PLAINTIFF-APPELLEE

vs.

**ALBERT LACAVA, ET AL.**

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-868794

---

**BEFORE:** Jones, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 16, 2018

**ATTORNEYS FOR APPELLANT**

**For Albert Lacava**

Albert Lacava, pro se
59 Brandywine Drive
Hudson, Ohio 44236

**ATTORNEYS FOR APPELLEES**

**For UBS Financial Services, Inc.**

Joseph S. Simms
Robert D. Barr
Christine M. Cooper
Amy A. Jeffries
Koehler Fitzgerald, L.L.C.
1301 East Ninth Street
3330 Erieview Tower
Cleveland, Ohio 44114

**For Mary Ellen Lacava and Assurance Investment Management, L.L.C.**

Joseph J. Triscaro
Triscaro & Associates, Ltd.
6325 Cochran Road, Suite 8
Solon, Ohio 44139

Carol Dillon Horvath
P.O. Box 42044
Middleburg Heights, Ohio 44130

**For Huntington National Bank**

Huntington National Bank, pro se
7 Easton Oval
ATTN: Legal Department EA2W34
Columbus, Ohio 43219

**For Northwest Bank**

Northwest Bank, pro se
ATTN: Product Support Services
100 Liberty Street
Warren, Pennsylvania 16365

**For JP Morgan Chase Bank NA**

JP Morgan Chase Bank NA, pro se
Court Orders and Levies Department
P.O. Box 183164
Columbus, Ohio 43218

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant Albert Lacava ("Lacava"), pro se, appeals from the trial court's July 28, 2017 decision granting summary judgment in favor of plaintiff-appellee UBS Financial Services, Inc.[1]  For the reasons that follow, we affirm.

## I.    Factual and Procedural History

{¶2} In September 2016, UBS initiated this action against Lacava, his wife Mary Ellen Lacava ("Mary Ellen"), and Assurance Investment Management, L.L.C. ("AIM").   The gravamen of the complaint was that Lacava, who had previously been an employee of UBS, fraudulently transferred to Mary Ellen the majority of his interest in AIM, which was an investment company he started after being terminated from UBS, in order to avoid a $196,963.89 judgment UBS had obtained against him.   The specific facts leading up to UBS's complaint are as follows.

{¶3} Lacava was employed at UBS from 2004 through 2008, when the company terminated him.   At the start of his employment with the company, UBS gave Lacava a "recruiting note."   When the company terminated his employment, it sought immediate repayment of the note.

{¶4} In December 2008, Lacava filed a statement of claim with the Financial Industry Regulation Authority ("FINRA") against UBS and some UBS employees.   UBS answered the claim and counterclaimed.   Arbitration hearings were held in Cleveland on the matter in December 2009 and February 2010.   On February 9, 2010, a FINRA arbitration panel denied all of Lacava's claims against UBS and awarded UBS judgment on its counterclaim in the amount of $196,963.89.

---

[1]Appellant was also pro se in the trial court proceedings.

**{¶5}** In April 2010, UBS filed an application in the Cuyahoga County Court of Common Pleas seeking confirmation of the arbitration award. *See* Cuyahoga C.P. No. CV-10-723001. Lacava failed to answer or otherwise respond to the application, and UBS was granted a default judgment against him.

**{¶6}** Meanwhile, as mentioned, Lacava had started AIM, which was registered with the Ohio Secretary of State in August 2008. Under the 2008 operating agreement, Lacava was AIM's sole member, with full management rights, and was entitled to all of its profits and cash proceeds. In 2009, Lacava entered into an "amended and restated" operating agreement; he still retained control and was entitled to all profits and cash proceeds.

**{¶7}** In January 2010, approximately two weeks before the FINRA arbitration proceedings concluded, Lacava entered into a "second amended and restated" operating agreement. Under the second amended operating agreement, Lacava transferred to Mary Ellen 94.8 percent of his ownership interest in AIM. Lacava did not receive any compensation for the ownership interest he transferred to Mary Ellen.

**{¶8}** The record further demonstrates that in 2010 Mary Ellen transferred $140,000 into AIM as a capital contribution, but Lacava did not receive any of those funds as consideration for the transfer of ownership. That same year, Mary Ellen withdrew $182,385 in distributions from AIM, while Lacava received only nominal distributions. Also in 2010, Mary Ellen received $51,407 in ordinary business income from AIM. She continued to receive substantial distributions and/or income from the company. And, on the other hand, Lacava, despite being employed by AIM, did not. But the record shows that the AIM account was used for what appeared to be personal business transactions, such as for utility bills, groceries, restaurants, and

veterinary bills. At all relevant times, Lacava remained the sole adviser for AIM, as well as its president and chief compliance officer.

{¶9} Since its arbitration award against Lacava, UBS attempted, to no avail, to collect against Lacava, because he apparently was insolvent.[2] It filed this action against him, Mary Ellen, and AIM, alleging that Lacava's transfer of his interest in AIM to Mary Ellen was fraudulent, and done so as to avoid satisfying the arbitration judgment against him.

{¶10} As mentioned, UBS filed this action in September 2016, alleging that Lacava's transfer of interest in AIM to Mary Ellen was fraudulent. UBS sought, among other things, (1) a charging order; (2) appointment of a receiver; (3) judgment setting aside the transfer of ownership of AIM, declaring it a fraudulent transfer; (4) attachment or garnishment against assets transferred to Mary Ellen; (5) an injunction preventing further disposition of the Lacavas' assets; (6) compensatory damages; (7) punitive damages; and (8) attorney fees.

{¶11} Lacava filed a motion to transfer the case to Summit County, where he and Mary Ellen lived, and where AIM was located. The court denied the motion. Lacava answered and counterclaimed, alleging (1) unfair competition; (2) "tortious interference with advantageous relations"; (3) breach of duty of good faith and fair dealing; (4) "tolling"; (5) defamation, slander, libel; (6) abusive process; (7) malicious prosecution; (8) "RICO"; (9) "violation of FINRA Rule 2010, that requires UBS to 'observe high standards of commercial honor and just and equitable principles of trade'"; (10) violation of the "Dodd-Frank Act"; and (11) the final counterclaim alleged that an UBS employee "conducted securities sales violations, which was colluded and

---

[2]UBS's efforts to collect from Lacava include seeking a: (1) judgment lien on his Hudson, Ohio home; (2) levy on his personal property; (3) wage garnishment; and (4) bank attachment.

cover-upped by * * * [the] Hudson Branch Manager and * * *UBS Director, and UBS's National

Ethics Department * * *."

{¶12} The parties filed motions for summary judgment. The trial court denied Lacava,

Mary Ellen, and AIM's motions, and granted the motion of UBS as to all three defendants. In

doing so, the court granted a charging order against the Lacavas' interest in AIM; voided the

$140,000 transfer to AIM and ordered that it be held to satisfy the judgment; enjoined AIM and

the Lacavas from disposing of assets; awarded UBS compensatory damages in the amount of

$196,963.89; awarded interest from the date of the fraudulent transfer; and awarded punitive

damages and attorney fees in favor of UBS.

{¶13} Mary Ellen and AIM have appealed; the cases are separate, companion appeals.[3]

Further facts will be discussed below as necessary.

## II. Assignments of Error

{¶14} Lacava raises the following 15 assignments of error for our review:

I. The trial court erred in giving summary judgment for Mr. Lacava and UBS, because the record shows many genuine disputes exist as to many material facts, then the case must go to trial, as a matter of law.

II. The trial court erred in denying Mr. Lacava (and all the other defendants) pleadings to transfer jurisdiction and venue to Summit County Common Pleas Court, the lawful jurisdiction and venue.

III. The trial court made plain error in its conclusory assertions of actual fraudulent conveyance. R.C. 1336.04.

IV. The trial court made plain error in its conclusory assertions of constructive fraudulent conveyance. R.C. 1336.05.

---

[3]Mary Ellen's appeal is 8th Dist. Cuyahoga No. 106461, and AIM's appeal is 8th Dist. Cuyahoga No. 106256.

V.   The trial court made plain error by violating the doctrine of separation of powers, not following the statutory language in R.C. 1336.07, first in applying the limitations of R.C. 1336.08.

VI.   The trial court made plain error by violating the doctrine of separation of powers, not following the statutory language that is limited to one (1) of the remedies listed in (A)(1) in R.C. 1336.07.

VII.   The trial court made plain error by violating the doctrine of separation of powers, by no legal authority, "MADE UP" unreasonable and conscience shocking remedies causing severe irreparable harm on Mr. Lacava's 5.2% personal ownership interest in AIM, LLC (who was granted statute of limitations protection, time barred from any claims and creditors are limited solely and exclusively to a charging order pursuant to R.C. 1705.19).

VIII.   The trial court made plain error in awarding compensatory damages.

IX.   The trial court made plain error in awarding punitive damages.

X.   The trial court erred in denying Mr. Lacava, a pro se defendant/appellant, his counterclaims and his refiling amendment to restate and resubmit the counterclaims.

XI.   The trial court made plain error making an instantaneous public conclusory judgment at very first hearing upon only opening remarks by UBS's counsel.   The trial court judge immediately openly stated on the record his opinion of "probably" illegal actions by Mr. Lacava, which is blatantly false and untrue, and no evidence to support.

XII.   The trial court made plain error in falsely concluding and stating five times in various sentences in the court order collection attempts and litigation by the plaintiff creditor was unsuccessful because the debtor was insolvent, wrong and unsupported by the record statement.

XIII.   The trial court made plain error when it states in the court order without support in the record 15 malicious and/or grossly inaccurate statements.

XIV.   The trial court erred in abusing its discretion in making defendants indigent by its unlawful court order, creating a health and safety risk for survival of life since all money was cut-off and attached, including fixture income from the family's only source of income.   In addition, my dependent 60 year old brother-in-law who we 100% support and is living with the Lacavas and has mental health issues and in unable to work and is in need of medical care is at high risk.

XV.   The trial court made plain error by not applying the lawful amount of statutory exemption in R.C. 2329.66(A)(3) cash of $600 per Ohio resident plus my brother-in-law who is a dependent, totals $1,200.

### III.   Law and Analysis

**Venue**

{¶15} We start with the second assignment of error, wherein Lacava contends that the trial court erred by denying his motion to transfer the case from Cuyahoga County to Summit County.[4] Lacava contends that Summit County was the proper venue because he and Mary Ellen reside there, and AIM is located there.

{¶16} Civ.R. 3(B) governs proper venue and provides that,

[a]ny action may be venued, commenced, and decided in any county. * * * Proper venue lies in any one or more of the following counties:
(1)   The county in which the defendant resides;

(2)   The county in which the defendant has his or her principal place of business;

(3)   A county in which the defendant conducted activity that gave rise to the claim for relief;

* * *

(6)   The county in which all or part of the claim for relief arose[.]

{¶17} Upon review, there was no abuse of discretion in the trial court's decision to deny Lacava's motion to change venue from Cuyahoga County to Summit County.   Part of UBS's claim for relief is based on the arbitration award it obtained against Lacava.   The record demonstrates that Lacava requested a Cleveland arbitration in his statement of claim, and that the

---

[4]We review the denial of the motion for an abuse of discretion. *See Premier Assocs., Ltd. v. Loper*, 149 Ohio App.3d 660, 2002-Ohio-5538, 778 N.E.2d 630, ¶ 37 (2d Dist.).

arbitration hearing was indeed held in Cleveland, Cuyahoga County, with two Cleveland-area arbitrators. The arbitration award was confirmed by the Cuyahoga County Common Pleas Court.

{¶18} On this record, venue was proper in Cuyahoga County. The second assignment of error is overruled.

**Counterclaims and Supplemental Pleading**

{¶19} We next consider the tenth assignment of error, under which Lacava claims the trial court erred by dismissing his counterclaims and by not allowing him to refile them.

{¶20} We first note that after the trial court dismissed Lacava's counterclaims, he did not file a motion or make a request to refile them. Thus, to the extent that he claims error in the denial of his request to file a supplemental pleading with the counterclaims, we summarily overrule the claim.

{¶21} In regard to the dismissal of his counterclaims, other than his conclusory allegation in his assignment of error, Lacava makes no argument to support a finding that the trial court erred in granting UBS's motion to dismiss his counterclaims. "'If an argument exists that can support [an] assignment of error, it is not [the appellate court's] duty to root it out. * * * It is not the function of [the appellate court] to construct a foundation for [an appellant's] claims[.]'" *In re A.Z.*, 4th Dist. Meigs No. 11CA3, 2011-Ohio-6739, ¶ 18, quoting *Coleman v. Davis*, 4th Dist. Jackson No. 10CA5, 2011-Ohio-506, ¶ 13. "In other words, '[i]t is not * * * our duty to create an argument where none is made.'" *In re A.Z.* at ¶ 18, quoting *Deutsche Bank Natl. Trust Co. v. Taylor*, 9th Dist. Summit No. 25281, 2011-Ohio-435, ¶ 7. Therefore, we "may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Fry v. Holzer Clinic, Inc.*, 4th Dist. Gallia No. 07CA4, 2008-Ohio-2194, ¶ 12; App.R.

12(A)(2).

{¶22} In light of the above, in this case, we do not believe the interests of justice require us to address Lacava's argument and also summarily reject this portion of his tenth assignment of error. *See Prokos v. Hines*, 4th Dist. Athens No. 10CA57, 2014-Ohio-1415, ¶ 57 (declining "to consider deficient assignments of error in the interests of justice.").

**Summary Judgment**

{¶23} We now move on to the crux of this appeal, the trial court's decision to grant summary judgment in favor of UBS and against Lacava. Our discussion below disposes of the remaining assignments of error — the first, third through ninth, and twelfth through fifteenth assignments of error.

**Standard of Review**

{¶24} This court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist.1983).

{¶25} Under Civ.R. 56(C), summary judgment is proper if (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *See also Temple v. Wean*

*United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶26}** To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the nonmoving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the nonmoving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 663 N.E.2d 639 (1996).

**{¶27}** The nonmoving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]"

**Fraudulent Transfer Under R.C. 1336.04(A)**

**{¶28}** R.C. 1336.04(A) governs "when [a] transfer or obligation incurred is fraudulent as to a creditor," and provides in relevant part as follows:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

{¶29} Subsection (B) of the statute lists some factors for consideration in determining whether there was actual intent:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

R.C. 1336.04(B).

{¶30} After reviewing all the pleadings submitted by the parties relevant to the motions for summary judgment, which included voluminous exhibits and affidavits, the trial court found that "[t]his case represents the most blatant form of fraudulent conveyance this court has ever seen." The court found that 9 of the 11 factors were relevant. After our de novo review of the record,

we agree with the trial court's findings.

**{¶31}** Under R.C. 1336.04(B)(1), Lacava's transfer was to an insider, his wife Mary Ellen. R.C. 1336.01(G)(1)(a) provides that if a debtor is an individual, an "insider" includes a relative of the debtor. Under R.C. 1336.04(B)(2), the court found that Lacava retained possession or control of the transferred property after the transfer. The court noted that although Lacava retained only a 5.8 percent membership interest "on paper" in AIM, he ran the business, was the only registered financial advisor for the business, and used the business's funds for "purchases other than true business expenses."

**{¶32}** The court further found, under R.C. 1336.04(B)(3), that Lacava attempted to conceal the transfer. The court noted that UBS only became aware of the transfer when it was conducting discovery during its attempt to satisfy its judgment it had obtained against Lacava. The trial court also found that AIM "continued to amend its Operating Agreement as recently as 2016 to continue to frustrate UBS and avoid the UBS judgment."

**{¶33}** In regard to whether Lacava had been sued or threatened with suit prior to the transfer, the factor set forth under R.C. 1336.04(B)(4), the trial court found that he was aware of the counterclaims made by UBS in the FINRA proceeding, had attended the arbitration and "probably had a sense of how the case was proceeding." Thus, Lacava's transfer to Mary Ellen, which occurred 19 days before the arbitration award against him, was a factor that weighed against him. Further, under R.C. 1336.04(B)(5), Lacava transferred 94.8 percent of his interest to Mary Ellen, which amounted to "substantially all of [his] assets," because after the transfer he has become uncollectible to UBS.

**{¶34}** The record demonstrates that, under R.C. 1336.04(B)(7), Lacava "removed or

concealed assets." The trial court described this factor as the "essence of the case." The record supports that description. Moreover, Lacava received nothing for the transfer to Mary Ellen, a factor supporting the fraud finding under R.C. 1336.04(B)(8). Thus, as the trial court found, it was "clearly a charade" for Lacava to have received nothing for the transfer of 94.2 percent interest in AIM, while having access to the $140,000 "alleged" capital contribution, "without exposing it to recovery by UBS."

{¶35} And, further, as mentioned, Lacava became insolvent after the transfer, a factor under R.C. 1336.04(B)(9), and the transfer occurred 19 days before the FINRA arbitration award, with UBS's counterclaims pending against Lacava, a factor under R.C. 1336.04(B)(10).

{¶36} In light of the above, nine of the 11 factors under R.C. 1336.04(B) weighed against Lacava and showed that a fraudulent transfer occurred. The record supports the trial court's decision to grant summary judgment in favor of UBS.

**Fraudulent Transfer under R.C. 1336.05**

{¶37} Because we agree with the trial court's finding of actual fraud under R.C. 1336.04, we only briefly discuss fraud under R.C. 1336.05. That section provides as follows:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

> (B) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

{¶38} As mentioned, the record demonstrates that UBS's claim arose before Lacava's

transfer to Mary Ellen, and that Lacava was insolvent at the time of the transfer. Further, despite Mary Ellen's alleged $140,000 capital contribution, Lacava received nothing in exchange for the transfer.

{¶39} Regardless of whether Lacava received any consideration in exchange for his transfer to Mary Ellen, the transfer would nonetheless be deemed invalid under subsection (B) because it was a transfer to "an insider for an antecedent debt [and] the debtor [Lacava] was insolvent at that time." The record is replete with indicia of Lacava's insolvency at the time of the transfer, including: (1) the $196,963.89 debt to UBS; (2) the pending foreclosure case against Lacava; (3) a levy proceeding, in which Lacava claimed that all of his interests in personal property were valued at $8,165; and (4) UBS's unsucessful attempts to attach Lacava's assets.

{¶40} In light of the above, the trial court properly found that the transfer was fraudulent. The first and third through fifth assignments of error are therefore overruled.

**Damages and Remedies**

{¶41} Lacava contends that the trial court violated the doctrine of separation of powers by failing to follow R.C. 1336.07(A) and 1336.08 in fashioning UBS's remedies. He further contends that the trial court erred by not applying the exemptions afforded under R.C. 2329.66.

{¶42} Relative to this appeal, R.C. 1336.07(A) governs remedies of a creditor, and provides in part as follows:

> (A) In an action for relief arising out of a transfer or an obligation that is fraudulent under section 1336.04 or 1336.05 of the Revised Code, a creditor * * * on behalf of a support creditor, subject to the limitations in section 1336.08 of the Revised Code, may obtain one of the following:
>
> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the claim of the creditor;

(2) An attachment or garnishment against the asset transferred or other property of the transferee in accordance with Chapters 2715. and 2716. of the Revised Code;

(3) Subject to the applicable principles of equity and in accordance with the Rules of Civil Procedure, any of the following:

(a) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(b) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee;

(c) Any other relief that the circumstances may require.

**{¶43}** Further, under R.C. 1336.08(B), "to the extent a transfer is voidable in an action by a creditor * * * under division (A)(1) of section 1336.07 of the Revised Code, the creditor * * * may recover a judgment for the value of the asset transferred * * *." R.C. 1336.08(B) provides that the judgment may be obtained against

(a) The first transferee of the asset or the person for whose benefit the transfer was made;

(b) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.

**{¶44}** If appropriate, the trial court may also determine whether punitive damages and attorney fees are warranted in a fraudulent transfer action.

Under Ohio law, punitive damages and attorney fees may be awarded when appropriate in fraudulent conveyance cases. * * * In order to recover punitive damages, a creditor must not only establish the underlying cause of action for the fraudulent transfer, but must also prove that the debtor acted with actual malice when making the fraudulent transfer. * * * A finding of actual malice requires proof that the debtor acted in the form of either: "(1) hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights of others that had a great probability of causing substantial harm."

*Sanderson Farms, Inc. v. Gasbarro*, 10th Dist. Franklin No. 01AP-461, 2004-Ohio 1460, ¶ 57, quoting *Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App.3d 651, 673, 729 N.E.2d

768 (8th Dist.1999).

{¶45} Moreover, a judgment creditor of a limited liability company, such as AIM is, may apply to the court of common pleas for a "charging order" under R.C. 1705.19(A). "A charging order is a judgment creditor's sole and exclusive remedy to satisfy a judgment against the membership interest of a limited liability company member under O.R.C. § 1705.19(B)." *Knollman-Wade Holdings, L.L.C. v. Platinum Ridge Properties*, 10th Dist. Franklin No. 14AP-595, 2015-Ohio-1619, ¶ 8.

{¶46} Upon review, the trial court's remedies in this case were proper. It voided Lacava's transfer of the majority of his membership interest in AIM to Mary Ellen as allowed under R.C. 1336.07(A)(1). Under Ohio law, the court properly awarded punitive damages and attorney fees. *See Sanderson Farms* at ¶ 57. And it properly issued a charging order under the authority of R.C. 1705.19(A).

{¶47} In regard to Lacava's contention that the trial court erred by not applying the exemptions afforded under R.C. 2329.66, we find that they were inapplicable to this case. The section provides that a right for people domiciled in Ohio to "hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order * * *." It sets forth the specific types of exempt properties, none of which are applicable here.[5]

---

[5]The exemptions are generally interests in: (1) real or personal property that the person or a dependent person uses as a residence if the judgment was for money owed for health care services or health care supplies; (2) a motor vehicle; (3) money to become due within 90 days, tax refunds, and money on deposit with a bank, savings and loan association, credit union, public utility, landlord, or other person, other than personal earnings; (4) items held primarily for the personal, family, or household use of the person; (5) tools of the person's trade; (6) a beneficiary fund, life insurance, annuities, money or charity paid by a fraternal benefit society, and benefits under policies of sickness and accident insurance; (7) professionally prescribed or medically necessary health aids; (8) a burial lot; (9) monies paid for living maintenance or rights, workers' compensation, unemployment compensation benefits, cash assistance payments under the Ohio works first program, benefits under the prevention, retention, and contingency program, and certain IRS payments; (10) certain annuity, retirement allowances, deferred compensation payments, and benefits from the Ohio public safety officers death benefit fund; (11) spousal and child support; (12) certain

{¶48} In light of the above, Lacava's assignments of error relative to the trial court's remedies — assignments of error six through nine and fourteen and fifteen — are without merit and are overruled.

**Complaints about the Trial Court**

{¶49} In his eleventh through thirteenth assignments of error, Lacava takes issues with various statements made and actions taken by the trial court. After careful review, we find no merit to any of the complaints. For example, Lacava complains that the trial court's actions created a health and safety risk to him and his family. That issue was outside the purview of the trial court's task in this case and, therefore, is not properly before us now.

{¶50} Further, Lacava's claim that statements made by the trial court were "blatantly false and untrue," "wrong and unsupported by the record," and "malicious and/or grossly inaccurate" are without merit. He complains, for example, that the trial court misrepresented that he used AIM accounts like his personal checking accounts. But the record supports a finding that he did just that.

{¶51} In light of the above, Lacava's eleventh through thirteenth assignments of error are overruled.

{¶52} The trial court's judgment is affirmed in all respects.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County

---

monies, such as a reparations award; (13) certain personal earnings; (14) specific partnership property; (15) a seal and official register of a notary public; (16) a tuition payment; (17) property exempted by federal statutes; and (18) certain property in bankruptcy proceedings.

Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR