[Cite as *UBS Fin. Servs., Inc. v. Assurance Invest. Mgt., L.L.C.*, 2019-Ohio-3661.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

UBS FINANCIAL SERVICES, INC.,          :

      Plaintiff-Appellee,          :

                             No. 107954

      v.          :

ASSURANCE INVESTMENT
MANAGEMENT, L.L.C., ET AL.          :

[Appeal by Albert Lacava and
Mary Ellen Lacava],

      Defendants-Appellants.          :

_____

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 12, 2019

_____

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-885699

_____

***Appearances:***

Reminger Co., L.P.A., Joseph S. Simms, and Andrew T.
Illig, *for appellee.*

Freeburg & Freeburg, L.L.C., and David A. Freeburg, *for
appellants.*

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Defendants-appellants Albert Lacava ("Albert") and Mary Ellen

Lacava ("Mary Ellen") (collectively referred to as the "Lacavas") appeal from the

order of the trial court appointing a receiver for Assurance Investment Management, L.L.C. ("AIM"), in plaintiff-appellee UBS Financial Services' ("UBS") action for a creditor's bill to collect upon a $196,963.89 judgment.[1]  The Lacavas assign the following errors for our review:

I. [The] trial court violated the right to due process of [the Lacavas] by appointing a receiver and granting the receiver powers to take possession of real and personal property belonging to [the Lacavas], when [they] were not parties to the action in which the receiver was appointed.

II. [The] trial court's order appointing a receiver, which grants the power to the receiver to evict [the Lacavas] from their home, violated Ohio law.

{¶ 2}   Having reviewed the record and the controlling case law, we affirm the decision of the trial court.

{¶ 3}   Albert joined UBS in 2004.  As part of his compensation package, he received approximately $347,000 in loans, portions of which were forgivable in six-year intervals.  *UBS Fin. Servs. v. LaCava*, 8th Dist. Cuyahoga No. 98919, 2013-Ohio-1669, ¶ 2 ("*Lacava I*").  Albert's employment with UBS was terminated in July 2008.  One month later, he started AIM, an investment company.  *UBS Fin. Servs. v. Lacava*, 8th Dist. Cuyahoga No. 106256, 2018-Ohio-3165, ¶ 2 ("*Lacava II*").  AIM's August 22, 2008 operating agreement listed Albert as AIM's sole owner, member, president, and chief investment officer, and it provided that Albert was entitled to all of AIM's profits and cash proceeds.  *UBS Fin. Servs. v. Lacava*, 8th

---

[1] As a point of clarification, we note that the record indicates two alternatives for appellants' surname, "LaCava" and "Lacava."  Insofar as Albert has used "Lacava," the instant opinion will also use that appellation.

Dist. Cuyahoga No. 106461, 2018-Ohio-3055, ¶ 5 ("*Lacava III*").  AIM's principal place of business was the Lacavas' residential address.  *Id.*

{¶ 4} Later in 2008, Albert brought an arbitration action against UBS, alleging breach of contract and other claims.  *Id.* at ¶ 4.  UBS counterclaimed for the amounts on the balance of Albert's loans, totaling $196,963.89.  *Id.*  Shortly before the announcement of the arbitration decision, Albert amended AIM's operating agreement to make Mary Ellen a member with a 94.8 percent ownership interest.  *Id.* at ¶ 5-7.  Mary Ellen, in turn, made a "capital contribution" of $140,000 to AIM.  *Id.* at ¶ 6.

{¶ 5} The arbitration panel found no merit to Albert's claims, but it found in favor of UBS for the loan balance and awarded judgment in favor of UBS for $196,963.89.  *Lacava I*, 2013-Ohio-1669, at ¶ 3.  In 2010, the trial court confirmed the arbitration award, and this court affirmed.  *Id.* at ¶ 1, 19.

{¶ 6} UBS made multiple unsuccessful attempts to collect upon the judgment.  *Lacava III*, 2018-Ohio 3055, at ¶ 8.  UBS discovered the restated AIM operating agreement that gave Mary Ellen a majority ownership interest in UBS "and effectively shielded [Albert's] assets in AIM from UBS."  *Id.*  On September 9, 2016, UBS filed a complaint against the Lacavas and AIM.  UBS alleged that the Lacavas had engaged in fraudulent transfers to avoid liability.  *Id.* at ¶ 10.  UBS asked the court to set aside the transfer of AIM's membership interests to Mary Ellen, and also requested a charging order under R.C. 1705.19, and the appointment of a receiver under R.C. 2735.01.  *Id.*  The trial court subsequently found that Albert's

transfer of his ownership interest in AIM to Mary Ellen constituted "the most blatant form of fraudulent conveyance this court has ever seen." *Id.* at ¶ 23. The court awarded UBS compensatory damages of $196,963.89, punitive damages of $98,481.95, and attorney fees and expenses of $50,635.33. *Id.* at ¶ 11. The court also granted UBS a charging order against the Lacavas' member interests in AIM, freezing AIM's assets and accounts, and ordering them to be released only to satisfy UBS's judgment. Additionally, the court voided Mary Ellen's transfer of $140,000 to AIM and ordered this sum held for purposes of satisfying UBS's judgment. *Id.* AIM, the Lacavas, and persons acting in concert with them were also enjoined from otherwise disposing of assets contrary to the terms of the charging order. *Id.*

{¶ 7} Each party appealed. This court affirmed the grant of the charging order as to AIM and its third party transferees, Amanda and Lauren Lacava. *See Lacava II*, 2018-Ohio-3165. This court also affirmed the orders as to Albert. *See UBS Fin. Servs. v. Lacava*, 2018-Ohio-3276, 118 N.E.3d 1008 (8th Dist.) ("*Lacava IV*"). A separate appeal by Mary Ellen was likewise affirmed. *Lacava III*, 2018-Ohio-3055.

{¶ 8} By 2017, UBS's judgment remained unsatisfied, and it filed the instant action for a creditor's bill against AIM and Charles Schwab & Co., Inc. The complaint was served on Albert, the statutory agent for AIM, at his residence. In May 2018, UBS advised the trial court that "[n]either of the Lacavas have produced a single document [despite being subpoenaed to do so under Civ.R. 45] and neither appeared for their scheduled depositions." UBS asked the court to hold the Lacavas

in contempt and to issue sanctions against them. UBS also advised the court that AIM had not responded to requests for production of documents and failed to send a representative to appear for deposition.

{¶ 9} The trial court held a hearing on the matter. The record indicates that Albert appeared at the hearing. The court ordered the Lacavas to comply with the terms of the Civ.R. 45 subpoena within fourteen days and ordered AIM to comply within seven days. Discovery remained incomplete by those deadlines, however, and UBS requested the appointment of a receiver and asked the court to hold the Lacavas in contempt. AIM and the Lacavas, through counsel, made "limited appearances" to challenge the appointment of a receiver and request a hearing. The trial court held a hearing and subsequently appointed a receiver over AIM. In relevant part, the trial court's order provides:

> Throughout the show cause hearing held before this Court on July 12, 2018 and July 20, 2018, [UBS] has made sufficient and proper showing of clear and convincing evidence that the appointment of a receiver is necessary.
>
> The motion of [UBS] to appoint a receiver is granted as to Defendant AIM.

{¶ 10} The court granted the receiver authority over AIM's financial records, and AIM's assets and property, including revenue, receivables, income, fees due from clients, transfer of revenue or fees to the Lacavas. In addition, the court's order provided the receiver with authority to lease the Lacavas' residence and prosecute eviction actions in a court of competent jurisdiction.

**Due Process**

{¶ 11} In the first assigned error, the Lacavas assert that the receivership order granting the receiver authority to take possession of real and personal property "belonging to [them]" deprives them of due process because they were not named parties to this case.

{¶ 12} "The question of whether the due process requirements have been satisfied presents a legal question we review de novo." *McRae v. State Med. Bd.*, 2014-Ohio-667, 9 N.E.3d 398, ¶ 36 (10th Dist.); *see also Gemmell v. Anthony*, 2016-Ohio-2686, 51 N.E.3d 663, ¶ 27 (4th Dist.). "'[T]he basic requirements of procedural due process are notice and an opportunity to be heard.'" *Fairfield Cty. Bd. of Commrs. v. Nally*, 143 Ohio St.3d 93, 2015-Ohio-991, 34 N.E.3d 873, ¶ 42, quoting *State v. Hudson*, 2013-Ohio-647, 986 N.E.2d 1128, ¶ 48 (3d Dist.).

{¶ 13} For the purposes of pretrial discovery, trial courts possess jurisdiction over nonparties through the issuance of a subpoena pursuant to Civ.R. 45. *See Yidi, L.L.C. v. JHB Hotel, L.L.C.*, 2016-Ohio-6955, 70 N.E.3d 1231, ¶ 15 (8th Dist.), citing *State ex rel. Capital One Bank (USA) N.A. v. Karner*, 8th Dist. Cuyahoga No. 96739, 2011-Ohio-6439, ¶ 20.

{¶ 14} Insofar as the Lacavas assert that they did not receive notice and an opportunity to be heard, the record reflects that the complaint against AIM was served on Albert. Albert and Mary Ellen, represented by counsel, entered limited appearances in this matter in order to contest the appointment of a receiver. They filed a motion for a hearing on the appointment of the receiver that was granted.

The Lacavas also had notice and an opportunity to be heard during the evidentiary hearing. On this record, the Lacavas were provided with due process prior to the appointment of the receiver.

{¶ 15} Insofar as the Lacavas assert that they are nonparties who have been subjected to orders of the court, the record demonstrates that they were served with subpoenas under Civ.R. 45, and repeatedly failed to comply with discovery attempts. Moreover, Lacavas have full control of AIM, the named defendant in this case. Further, in *Lacava II*, this court recognized that Albert was a fraudulent transferor to Mary Ellen, Mary Ellen was a fraudulent transferor to AIM, and AIM was the "fraudulent transferee." *Id.*, 2018-Ohio-3165, at ¶ 12, 28, 73. UBS's remedy as a judgment creditor included obtaining a charging order against the Lacavas' "membership interest[s]" in AIM. *Id.* at ¶ 24. Therefore, contrary to the Lacavas' claims that the receiver has authority over property "belonging to [them]," the "trial court's order require[s] AIM — comprised of the fraudulent transferor and the fraudulent transferee — to comply with the charging order[.]" *Id.* at ¶ 23; *Lacava IV,* 2018-Ohio-3276, at ¶ 45-46.

{¶ 16} Therefore, in accordance with all of the foregoing, the first assigned error is without merit.

**Appointment of a Receiver**

{¶ 17} In the second assigned error, the Lacavas assert that the trial court erred in appointing a receiver over AIM and included their home within the scope of the receivership.

{¶ 18} A trial court's decision whether to appoint a receiver will not be reversed absent a clear abuse of discretion. *Haber Polk Kabat, L.L.P. v. Condos. at Stonebridge Owners' Assn.*, 2017-Ohio-8069, 98 N.E.3d 1172, ¶ 23 (8th Dist.); *Sobin v. Lim*, 2014-Ohio-4935, 21 N.E.3d 344, ¶ 14 (8th Dist.). *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 74, 573 N.E.2d 62 (1991) ("It naturally follows that Gibbs would have to demonstrate that the trial court abused its discretion when it empowered the receiver to collect rents.").

{¶ 19} Because appointment of a receiver is "such an extraordinary remedy," the need for a receiver must be established by clear and convincing evidence. *Id.*, citing *2115-2121 Ontario Bldg., L.L.C. v. Anter*, 8th Dist. Cuyahoga No. 98627, 2013-Ohio-2995, ¶ 14. In this case, the trial court appointed a receiver pursuant to R.C. 2735.01(A)(4) (to carry a judgment into effect), R.C. 2735.01(A)(5) (to preserve property according to a judgment), and R.C. 2735.01(A)(6) (where a limited liability company is insolvent or in imminent danger of insolvency). Under R.C. 2735.04, a receiver may bring and defend actions in his own name as receiver, take and keep possession of property, receive rents, collect, compound for, and compromise demands, and generally do such acts respecting the property as the court authorizes.

{¶ 20} The appellant bears the burden of demonstrating error on appeal by reference to the record of the proceedings below. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). In the absence of a complete and adequate record, a reviewing court must presume the regularity of the trial court proceedings and the presence of sufficient evidence to support the trial court's

decision. *Thomas v. Laws*, 8th Dist. Cuyahoga No. 104710, 2016-Ohio-8491, ¶ 10, citing *Tisco Trading USA, Inc. v. Cleveland Metal Exchange, Ltd.*, 8th Dist. Cuyahoga No. 97446, 2012-Ohio-1646, ¶ 6. *Accord Klaus v. Cross*, 8th Dist. Cuyahoga No. 48530, 1985 Ohio App. LEXIS 5745 (Feb. 7, 1985) (presuming regularity in the absence of a transcript of hearing and affirming the appointment of a receiver).

{¶ 21} No transcript has been provided in this instance and counsel for the Lacavas have conceded the court's general right to appoint a receiver in this case. Moreover, the record clearly shows that the receiver was appointed in order to carry the prior judgments into effect and to preserve property according to the judgments, after UBS's protracted unsuccessful efforts to collect upon its judgments, and the Lacavas' fraudulent transfers and failure to provide discovery.

{¶ 22} Likewise, in an analogous case, *Mahoning Natl. Bank v. Wilhelm*, 7th Dist. Mahoning Nos. 04 MA 248, and 04 MA 249, 2006-Ohio-6132, the court affirmed the appointment of a receiver and stated:

> Appellant does correctly state that the appointment of a receiver is an extraordinary remedy and that, "a petitioning party must show by clear and convincing evidence that the appointment is necessary for the preservation of the petitioning party's rights." *Milo v. Curtis* (1994), 100 Ohio App.3d 1, 5, 651 N.E.2d 1340. Although in Appellant's appeal he essentially argues that insufficient evidence was presented to support the trial court judgment, there is no direct way to review what evidence was presented to support the appointment of a receiver because there are no transcripts of any of the relevant hearings. Nevertheless, the record that has been supplied on appeal indirectly supports the trial court judgment. * * * It is obvious that Appellant has been resisting Appellees' attempts to collect their judgments, thus

supporting the trial court's conclusion that a receivership was necessary.

*Id.* at ¶ 10.

{¶ 23} Finally, as to the Lacavas' claim that the receivership improperly includes their home, UBS concedes that the receiver is not authorized to sell the Lacavas' personal residence but "merely authorizes the collection of rents at the location where the receivership entity (AIM) does business." Indisputably, judgments have been issued against the Lacavas and AIM, including judgments for fraudulent transfers to AIM. Further, R.C. 2735.04 specifically authorizes receivers to "collect rents," and "AIM's principal place of business was [the Lacavas'] residential address." *Lacava III*, 2018-Ohio 3055, at ¶ 5. Therefore, given the peculiar history of this case, including the prior judgments and Albert's fraudulent transfer of his ownership interest in AIM to Mary Ellen, AIM's principal place of business as the Lacavas' residential address, the Lacavas' failure to provide discovery, and the absence of a transcript of the proceedings, we find no error in the receiver's collection of rents at this location.

{¶ 24} Insofar as the Lacavas complain that the court's order authorizes the receiver to lease their home or pursue forcible entry and detainer action, we recognize that the record does not contain clear evidence about the home. The instant record does not contain evidence as to whether AIM owns the home, the chain of title, and whether AIM is presently a lessee or a lessor of the home. Given these uncertainties and recognizing that a receiver generally "steps into the shoes"

of AIM, *see Bancohio Nat. Bank v. Southland Lanes, Inc.*, 3d Dist. Seneca No. 13-87-10, 1988 Ohio App. LEXIS 1828, 16 (May 12, 1988), it is unclear to this court that the receiver appointed over AIM was properly authorized to lease the property or to pursue forcible entry and detainer actions in relation to the property. However, at this point, these issues have not been clearly developed in the record, so we decline to offer an advisory opinion about them.

{¶ 25} Similarly, insofar as the Lacavas are asserting that they have been deprived substantive due process in this matter because R.C. 2329.66 exempts $125,000 of their interest in the Brandywine residence from execution, this court noted in *Lacava III*, the "argument regarding R.C. 2329.66(A) concerns exemptions that could possibly come into effect upon execution of a judgment. Execution in this case, however, has not yet occurred." *Id.*, 2018-Ohio-3055 at ¶ 46.

{¶ 26} In accordance with all of the foregoing, the second assigned error lacks merit.

{¶ 27} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be issued out of this court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
RAYMOND C. HEADEN, J., CONCUR